**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**CRISTY EUGENE COLEMAN,**

**Petitioner,**

**v.** **CRIMINAL NO. 4:17-cr-69**

**UNITED STATES OF AMERICA,**

**Respondent.**

***MEMORANDUM OPINION AND ORDER***

Before the Court is Christy Eugene Coleman's ("Petitioner") Motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 30.

## I. FACTUAL AND PROCEDURAL HISTORY

Between December 21, 2016 and January 2, 2017, Petitioner received at least 17 images containing child pornography. ECF No. 32 at ¶ 5. Subsequent investigation of Petitioner's electronic devices revealed 16,013 images of child pornography. *Id.* On July 11, 2017, Petitioner was the sole defendant named in an eight-count Indictment. ECF No. 1. On September 19, 2017, Petitioner pleaded guilty to Count 5, Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A (a)(2) and (b)(1). ECF Nos. 13–15. On January 17, 2018, the Court sentenced Petitioner to a term of 84 months. ECF Nos. 24–27.

On May 6, 2020, Petitioner filed his Motion for Compassionate Release. ECF No. 30. On May 8, 2020 the Court ordered the appropriate responses. ECF No. 31. On May 26, 2020, the Government responded in opposition. ECF No. 34. This matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Administrative Exhaustion

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Zukerman*, 2020 WL 1659880, at *3; *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the

passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

## III. DISCUSSION

### A. The Exhaustion Issue

The Court has previously rejected the Government's contention that the provision within § 3582(c)(1)(A) requiring a petitioner to exhaust his or her administrative remedies is a jurisdictional bar or a mandatory claim-processing rule that precludes the grant of compassionate release. *See e.g. Poulios v. United States*, 2020 WL 1922775, at *2–*3 (E.D. Va. Apr. 21, 2020) (holding that the exhaustion requirement may be waived due to futility, inadequate relief, or undue prejudice); *Casey v. United States*, 2020 WL 2297184, at *2, n. 1 (E.D. Va. May 6, 2020) (waiving the exhaustion requirement and declining to characterize it as a jurisdictional requirement). It is clear that the exhaustion requirement should not be treated as a jurisdictional bar or a mandatory claim processing rule when considering the context of the COVID-19 pandemic and congressional intent in its enactment of the FIRST STEP Act.

Prior to the passage of the FIRST STEP Act, only the BOP was authorized to file compassionate release motions on behalf of federal inmates and the agency rarely exercised its ability to do so. *United States v. Rodriguez*, 2020 WL 1627331, at *2 (Apr. 1, 2020). In the span of nearly two decades, an average of only 24 federal inmates each year were released on BOP-filed motions. *Id.* As a result, BOP's compassionate release program was described as "poorly managed and implemented inconsistently, ... resulting in eligible inmates ... not being considered for release, and terminally ill inmates dying before their requests were decided. *Id.* It was against the foregoing backdrop that Congress passed the FIRST STEP Act, allowing federal inmates to petition the district court for compassionate release 30 days after filing an administrative request with the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The purpose of this change was to increase the use

and transparency of compassionate release by removing the nearly impenetrable barrier formerly presented by the Bureau of Prisons. *McCoy*, 2020 WL 2738225, at *4.

Despite Congress' intent to increase compassionate release, BOP's chronic mismanagement of its compassionate release discretion has persisted in the midst of the COVID-19 pandemic. For example, FCI Elkton has one of the worst outbreaks within a BOP facility, with one in four inmates testing positive with only partial implementation of the institution's mass testing plan. *Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020). Despite testing just two days per week, there is still an "unacceptable" percentage of positive tests and the BOP has been "ineffective…at stopping the spread." *Id.* at *1. Additionally, the BOP previously identified 837 individuals especially vulnerable to COVID-19 but has recommended just 11 members of that subclass as potentially qualifying for home confinement. *Id.* Thus, the BOP "made only minimal effort to get at-risk inmates out of harm's way" and was found out of compliance with a previous court order on its use of the administrative discretion provided by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and recommendations for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *Id.* at *2. Due to the administrative challenges presented by the COVID-19 pandemic and the extreme unlikelihood of action from the BOP within 30 days, the Court finds that compliance with the exhaustion requirement on COVID-19-related petitions for compassionate release is unduly prejudicial as a general matter.

Two circuit courts outside of the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") have recently found that a petitioner's failure to exhaust his or her administrative remedies precludes a district court's consideration of compassionate release. *United States v. Alam*, 2020 WL 2845694 (6th Cir. June 2, 2020); *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020). However, the Fourth Circuit has not ruled on the issue and outside precedent is not

binding on this Court. As an initial matter, the conclusion that "[t]he system is working as it should" is wholly unsupported by the BOP's inaction on the requests of vulnerable inmates and uneven implementation of its own criteria for home confinement, which seems to favor high profile inmates.[1] *Alam*, 2020 WL 2845694, at *5. In contrast, the BOP's implementation of its home confinement procedures for most vulnerable inmates has been unreasonably slow, increasing the risk of infection among all inmates and prison staff. *Wilson*, 2020 WL 2542131, at *1–2; *Martinez-Brooks v. Easter*, 2020 WL 2405350 (D. Conn. May 12, 2020) (documenting BOP inaction on requests for home confinement, granting a temporary restraining order over the objection of the BOP, and ordering the BOP to produce a list of medically vulnerable inmates at FCI Danbury). Additionally, the assertion that "[t]hirty days hardly rises to the level of an unreasonable...timeframe" completely ignores context of the COVID-19 pandemic. *Alam*, 2020 WL 2845694, at *4; *see Martinez-Brooks*, 2020 WL 2405350, at *28 (recognizing that serious illness or death can befall medically vulnerable inmates infected with COVID-19 long before the passage of 30 days).

Upholding the exhaustion requirement during the COVID-19 pandemic also fails to increase the orderliness and fairness of the Court's resolution of requests for compassionate release. Instead, it would simply delay consideration of requests for compassionate release for at

---

[1] Josh Gerstein, *Paul Manafort Released from Prison Because of Virus Concerns*, POLITICO (May 13, 2020) https://www.politico.com/news/2020/05/13/paul-manafort-released-from-prison-due-to-virus-concerns-254532 ("Manafort, 71, had served about 23 months of his sentence, leaving him well short of the halfway mark" listed in BOP criteria for home confinement"); Matt Zapotosky, *Michael Cohen Released from Federal Prison Over Coronavirus Concerns*, WASH. POST (May 21, 2020), https://www.washingtonpost.com/national/michael-cohen-released-from-federal-prison-over-coronavirus-concerns/2020/05/21/21660620-96ca-11ea-91d7-cf4423d47683_story.html (discussing BOP's timely release of Michael Cohen, 53, to home confinement as soon as there was less than 18 months left on his sentence despite a judge's denial of his request for early release); *id.* (reporting the "ongoing disfunction" and inconsistent application of the BOP's home confinement discretion). Of course, COVID-19 infections do not account for the status of an inmate or the amount of time he or she has served, heightening the imperative for courts to consider the vulnerability of each petitioner in conjunction with a proper application of § 3582(c)(1)(A).

least 30 days without any indication that the BOP has improved its process for resolving administrative requests for home confinement. At the end of 30 days, medically vulnerable inmates are overwhelmingly likely to face the same incentives to file a motion with this Court, all while prolonging the risk of infection and the potential for serious illness or death. Worse yet, upholding the exhaustion requirement creates the possibility of subjecting a medically vulnerable inmate to an undue risk of infection, even after the Government has agreed that home confinement is appropriate. *See e.g. Casey*, 2020 WL 2297184, at *2 (noting the Government's concession that the petitioner had established a sound basis for compassionate release and criticizing the imposition of the 30 day exhaustion requirement as "illogical"). Specific to this Petitioner, the Government points out that he is not eligible for home confinement based on the BOP's stated criteria, making it certain that he will simply file the same motion again in 30 days. ECF No. 34 at 25.

While the plain text of the FIRST STEP Act "creates an exhaustion requirement like no other of which the Court is aware," the structure and purpose of the act indicate that equitable exceptions to the exhaustion requirement must apply to requests for compassionate release during the COVID-19 pandemic. *United States v. Scparta*, 2020 WL 1910481, at *6–*7 (S.D.N.Y. Apr. 20, 2020). Moreover, "Congress specifically designed the FIRST STEP Act to result in expeditious review of prisoner applications and to improve the health and safety of inmates, prison staff, and the community," *Id.* at 7. Accordingly, equitable exceptions to the exhaustion requirement are necessary for timely judicial review of compassionate release motions during the COVID-19 pandemic. *United States v. Williams-Bethea*, 2020 WL 2848098, at *3 (S.D.N.Y. June 2, 2020). To hold otherwise ignores the purpose of the FIRST STEP Act and the BOP's track record of resolving administrative requests for compassionate release.

In sum, the Court is disinclined to transform a provision that was designed to speed up the administration of compassionate release into a provision that delays the resolution of motions for compassionate release in the midst of a pandemic. When the FIRST STEP Act was passed, Congress removed the BOP from its former role of prioritizing claims for compassionate release and investigating the gravity of every petitioner's condition prior to judicial review. Under such circumstances, "judicial waiver of the exhaustion requirement is permissible in light of the extraordinary threat certain inmates face from COVID-19." *United States v. Bass*, 2020 WL 2831851, at *5 (N.D.N.Y. May 27, 2020) (internal citations omitted).

**B. Resolution of the Defendant's Request for Compassionate Release**

Notwithstanding the Court's waiver of the exhaustion requirement, Petitioner must still demonstrate an "extraordinary and compelling reason" for a sentence modification, consistent with the requirements of § 3582(c)(1)(A)(i).

Today, Petitioner is 62 years old and afflicted by the same heart condition that was present when he committed the instant offense. ECF No. 32 at ¶¶ 53–54. He also had a heart attack and a cardiac catheterization in 2015. *Id.* at ¶ 54. In addition, Petitioner has a history of mental health issues and there is some indication of alcohol abuse. *Id.* at ¶¶ 57–60. At the time of his arrest on the instant offense, Petitioner had no significant criminal history and a long record of gainful employment. *Id.* at ¶ 79. The development of Petitioner's child pornography habit started upon his discharge from the Air Force and culminated with the extensive cache of illicit images and videos accumulated between 2014 and 2017. *Id.* at ¶ 59, 71.

At the outset of the analysis of whether Petitioner has presented an extraordinary and compelling reason for compassionate release, the Court is advised against grants of compassionate release when the petitioner is a danger to the safety of any person or to the community. U.S.S.G.

§ 1B1.13(2); *see also Dinning v. United States*, 2020 WL 1889361, at *3 (E.D. Va. Apr. 16, 2020) (denying compassionate release because the petitioner "poses an ongoing danger to the community" based on his stated desire to return to the same positions of trust that facilitated his offense). Relatedly, federal courts have been disinclined to grant compassionate release to petitioners convicted of crimes involving child pornography, even for vulnerable petitioners during the COVID-19 pandemic, citing potential dangerousness. *See e.g. United States v. Mitchell*, 2020 WL 2770070, at *4 (E.D. Cal. May 28, 2020) (denying compassionate release because of the petitioner's lack of rehabilitation and the absence of a detailed plan to prevent reoffending) *citing United States v. Feiling*, 2020 WL 1821457, at *8 (E.D. Va. Apr. 10, 2020) (denying motion for compassionate release in part because the petitioner committed his offense while at home and wanted to return home to finish his sentence); *United States v. Meizin*, 2020 WL 1985042, at *5 (N.D. Ohio Apr. 27, 2020) (denying a motion for compassionate release because of the easy access to electronic devices that would allow the petitioner to reoffend); *United States v. Hylander*, 2020 WL 1915950, at *3 (S.D. Fla. Apr. 20, 2020) (denying a motion for compassionate release because the petitioner wanted to return to the location of his offense upon release). However, regardless of the offense at issue, a sentence should not unnecessarily "include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic." *United States v. Zukerman*, 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020) *quoting United States v. Rodriguez*, 2020 WL 1627331, at *12 (Apr. 1, 2020). Accordingly, the Court finds that while offense conduct may inform the Court's discretion in deciding a motion for compassionate release and determining the appropriate conditions of release, such a motion may not be denied simply because of the underlying offenses.

However, the Court is concerned that Petitioner's release plan does not adequately protect the public from the potential of a subsequent offense involving child pornography. *See* 18 U.S.C. § 3553(a)(2)(C); U.S.S.G. § 1B1.13(2). Petitioner committed the instant offense while in the presence of family members, usually waiting until they went to sleep to view illicit images. ECF No. 32 at ¶¶ 7, 50. His offense also involved the exploitation and subsequent alienation of his family members, casting doubt on whether placement with his 88-year-old mother is a suitable post-release arrangement. ECF No. 32 at ¶ 50 (indicating that Petitioner was ejected from his daughter's house upon arrest on the instant offense).

There is also no evidence that Petitioner has participated in rehabilitative programming specific to his offense of conviction. Further, the monitoring of Petitioner's behavior in a similar environment that facilitated his offense would be unrealistic. *Mitchell*, 2020 WL 2770070, at *4 ("Absent any evidence supporting defendant's rehabilitation or a detailed release plan imposing conditions to prevent the likelihood of defendant's reoffending...defendant has not met his burden to show releasing him to home confinement will not pose a danger to the public"); *see also Meizin*, 2020 WL 1985042, at *5 ("effectively monitoring [petitioner]...would enhance the risk of spread of COVID-19"). Similarly, the Court does not have confidence that Petitioner's release plan is conducive to appropriate conditions of supervision and would provide the community with adequate protection against the potential for a subsequent offense. Although there is indisputable evidence that Petitioner suffers from a comorbidity that makes him susceptible to COVID-19, his release plan is too problematic to sustain a finding of an extraordinary and compelling reason.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

/s/
Raymond A. Jackson
**United States District Judge**

Newport News, Virginia
June 4, 2020